IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BCFOODS, INC.,<br><br>        **Plaintiff,**<br><br>        v.<br><br>THE UNITED STATES OF AMERICA;<br>U.S. CUSTOMS AND BORDER<br>PROTECTION; and RODNEY S. SCOTT,<br>in his official capacity as Commissioner of<br>U.S. Customs and Border Protection,<br><br>        **Defendants.** | Case No. 25-cv-00330 |

**COMPLAINT**

1. Since taking office, President Trump has imposed tariffs on imports from nearly all countries under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq.* (1977) ("IEEPA"). The IEEPA tariffs have vastly varied in rate, scope, and applicability since first imposed. Notwithstanding, for the greater part of 2025, goods entering the United States from anywhere in the world have been subject to IEEPA duties of at least 10 percent and as high as 145 percent.

2. In April 2025, a group of importers and States challenged whether IEEPA empowers the President to impose these tariffs. This Court eventually found that it does not. On May 28, 2025, this Court specifically declared that four Executive Orders that imposed IEEPA tariffs on Mexico, Canada, China, and practically the rest of the world were unconstitutional. This Court then permanently enjoined the collection of tariffs under those Executive Orders.

3. The government appealed this decision to the United States Court of Appeals for the Federal Circuit ("CAFC"). The CAFC stayed enforcement of the injunction while considering the appeal. Then, on August 29, 2025, the CAFC affirmed this Court's ruling that the Executive

1

Orders "exceeded the authority delegated to the President by IEEPA's text" and "that the orders are 'invalid as contrary to law.'"

4. The government appealed this decision to the Supreme Court of the United States.

5. The government continues to collect these unlawful tariffs while the case is on appeal.

6. This action is necessary to ensure Plaintiff obtains its own judicial relief. If the Supreme Court finds the IEEPA duties unlawful, it is not otherwise guaranteed a refund for those unlawfully collected tariffs.

7. This action is also necessary because the entries under which Plaintiff paid IEEPA tariffs are at risk of liquidating and becoming final. This could happen at any time and will begin as a matter of law on February 3, 2026. Plaintiff seeks relief from the impending final liquidations to ensure that its right to a complete refund is not jeopardized.[1]

8. Accordingly, Plaintiff brings this action to recover all tariffs that the United States has unlawfully collected under IEEPA.

**PARTIES**

9. Plaintiff, BCFoods, Inc. ("BCFoods"), is a Delaware Corporation. BCFoods is a leading food ingredients supplier. BCFoods has paid tariffs illegally exacted under IEEPA.

10. Defendant the United States of America collected the illegally exacted duties and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

---

[1] Plaintiff, after seeking the Defendants' consent pursuant to Rule 7(f) of this Court, will be filing a motion for a preliminary injunction to suspend liquidation of all entries under which the Defendants purport to impose duties under IEEPA.

11. Defendant United States Customs and Border Protection ("CBP") is a component agency of the United States Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs on imported goods.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

## JURISDICTION AND VENUE

13. This Court has exclusive subject-matter jurisdiction over this Action under 28 U.S.C. §§ 1581(i)(1)(A)-(C) because it is brought against the United States and "arises out of a[] law of the United States providing for . . . embargoes or other quantitative restrictions of the importation of merchandise for reasons other than the protection of the public health or safety," "arises out of a[] law of the United States" that has been improperly invoked to "provid[e] for . . . tariffs [and] duties . . . for reasons other than the raising of revenue," and also "arises out of a[] law of the United States providing for revenue from imports." *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1365-67 (Ct. Int'l Trade 2025) (cleaned up); *see also V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (affirming the United States Court of International Trade's subject matter jurisdiction over matters related to the validity of the IEEPA tariffs).

## FACTUAL AND LEGAL BACKGROUND

**President Enacts Tariffs under the International Emergency Economic Powers Act**

14. On February 1, 2025, President Trump issued three Executive Orders under IEEPA that imposed tariffs on goods from Canada, Mexico and China (the "trafficking tariffs"). Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113, 9114 (Feb. 1, 2025); Executive Order 14194, *Imposing Duties to Address the*

*Situation at Our Southern Border*, 90 Fed. Reg. 9117, 9118 (Feb. 1, 2025) ("Mexico Tariff Order"); Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121, 9122 (Feb. 1, 2025). The trafficking tariffs were imposed to address public health threats caused by the trafficking of illicit drugs like fentanyl from Canada, Mexico, and China. *Id.*

15.  Following February 1, 2025, the trafficking tariffs were substantially amended in rate, scope, and applicability. *See* Executive Order 14198*, Progress on the Situation at Our Southern Border,* 90 Fed. Reg. 9185, 9185 (Feb. 3, 2025)*;* Executive Order 14197*, Progress on the Situation at Our Northern Border,* 90 Fed. Reg. 9183, 9183 (Feb. 3, 2025); Executive Order 14226, *Amendment to Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11369, 11369 (Mar. 2, 2025); Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277, 9277 (Feb. 5, 2025); Executive Order 14227, *Amendment to Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 11371, 11371 (Mar. 2, 2025); Executive Order 14231, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11785, 11785 (Mar. 6, 2025); Executive Order 14232, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11787, 11787 (Mar. 6, 2025);  Executive Order 14256, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China as Applied to Low-Value Imports*, 90 Fed. Reg. 14899, 14899 (Apr. 2, 2025); Executive Order 14325, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37957, 37957 (Jul. 31, 2025).

16.  Following the amendments, the trafficking tariff rates for goods from Mexico and Canada that do not meet the country of origin requirements of the United States-Mexico-Canada

Agreement are 25 and 35 percent, respectively. The rate for Chinese goods is 10 percent. *See* Executive Order 14357, *Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50725, 50725 (Nov. 4, 2025).

17.  On April 2, 2025, President Trump imposed additional tariffs under IEEPA – styled as reciprocal tariffs – on "'all imports from all trading partners,' which 'shall increase for' a list of 57 countries to higher rates ranging from 11 percent to as high as 50 percent ad valorem." Executive Order 14257, *Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041, 15045 (Apr. 2, 2025). Shortly thereafter, the reciprocal tariffs were paused for all countries besides China for 90 days. *See* Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625, 15626 (Apr. 9, 2025).

18.  For all countries but China, the reciprocal tariff rate on practically all goods would be 10 percent. For China, the reciprocal tariff rate was increased from 34 to 84 percent, Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15509, 15509 (Apr. 8, 2025), and then from 84 to 125 percent, effective April 10, 2025, Executive Order 14266, 90 Fed. Reg. at 15626. China's reciprocal tariff rate was later lowered to 10 percent. Executive Order 14298, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21831, 21831 (May 12, 2025).

19.  This Court's opinion and judgment found that the Executive Orders issued up to and including May 12, 2025, were unconstitutional. *V.O.S. Selections, Inc.*, 772 F. Supp. 3d 1350. Plaintiff will refer to these Orders that purport to enact tariffs pursuant to IEEPA as the "Challenged Executive Orders."

20. President Trump has issued several trade and tariff related Executive Orders under IEEPA since May 12, 2025, such as:

    a. Executive Order 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30823, 30823 (Jul. 7, 2025) (extending temporary suspension of certain reciprocal tariff rates to continue trade negotiations with certain countries);

    b. Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739, 37739 (Jul. 30, 2025) (imposing 40 percent tariffs in response to alleged censorship and human rights violations by the Brazilian government);

    c. Executive Order 14324, *Suspending Duty-Free De Minimis Treatment for All Countries*, 90 Fed. Reg. 37775, 37775 (Jul. 30, 2025) (eliminating *de minimis* duty exemptions to address alleged national security and trade enforcement concerns);

    d. Executive Order 14325, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37957, 37957 (Jul. 31, 2025) (increasing trafficking tariff on Canadian goods to 35 percent due to alleged inadequate cooperation on drug enforcement);

    e. Executive Order 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37963, 37963 (Jul. 31, 2025) (adjusting tariff rates based on trade agreement negotiations with trading partners);

    f. Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701, 38701 (Aug.

           6, 2025) (imposing 25 percent tariff on Indian imports due to India's trade in Russian oil);

g.    Executive Order 14334, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39305, 39305 (Aug. 11, 2025) (extending reciprocal tariff suspension on Chinese goods amid ongoing trade negotiations);

h.    Executive Order 14345, *Implementing the United States-Japan Agreement*, 90 Fed. Reg 43535, 43535 (Sep. 4, 2025) (modifying scope of IEEPA and Section 232 tariffs to reflect trade agreement reached with Japan);

i.    Executive Order 14346, *Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements*, 90 Fed. Reg. 43737, 43737 (Sep. 5, 2025) (modifying prior tariff exclusions under Executive Order 14257 and establishing procedures for implementing trade and security agreements);

j.    Executive Order 14357, *Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50725, 50725 (Nov. 4, 2025) (lowering the Chinese trafficking tariff from 20 percent to 10 percent);

k.    Executive Order 14358, *Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50729, 50729 (Nov. 4, 2025) (extending the period during which the reciprocal tariff on Chinese goods is 10 percent as opposed to 34 percent);

7

      l.      Executive Order 14360, *Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54091, 54091 (Nov. 14, 2025) (implementing exceptions to the reciprocal tariffs for certain agricultural products); and

      m.      Executive Order 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54467, 54467 (Nov. 20, 2025) (implementing exceptions to the Brazil IEEPA tariff for certain agricultural products).

21.    Plaintiff will refer to the Executive Orders issued after May 12, 2025, as the "Subsequent Executive Orders."

### BCFoods Pays Tariffs

22.    Plaintiff is in the food ingredients business.

23.    In the ordinary course of that business, Plaintiff imports merchandise into the customs territory of the United States.

24.    To continue operating, Plaintiff imported merchandise on, around, and following the date that the United States imposed tariffs under IEEPA, pursuant to both the Challenged and Subsequent Executive Orders.

25.    In compliance with the then effective laws, Plaintiff paid all applicable tariffs exacted by the United States – including the tariffs imposed under IEEPA, pursuant to both the Challenged and Subsequent Executive Orders.

### This Court Holds the Duties Unconstitutional

26.    On May 28, 2025, this Court issued an opinion holding the IEEPA tariffs imposed under the Challenged Executive Orders unconstitutional. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).

27. Separately, this Court "ORDERED that Executive Order 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 1, 2025); Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 1, 2025); Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025); Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 2, 2025) . . .; and all modifications and amendments thereto; be, and hereby are, declared to be invalid as contrary to law." *Id.*, Dkt. No. 56.

28. In line with this Order, this Court permanently enjoined the collection of duties pursuant to any of those orders.

29. The United States promptly appealed to the CAFC and sought a stay of enforcement of this Court's injunction.

**The Court of Appeals for the Federal Circuit Upholds this Court's Ruling**

30. The CAFC stayed enforcement of this Court's injunction pending the appeal on June 10, 2025. *V.O.S. Selections, Inc.,* 149 F.4th 1312, Dkt. No. BL-51. As a result of the stay, the United States continues to collect tariffs enacted under IEEPA.

31. Then, on August 29, 2025, the CAFC issued an opinion affirming-in-part, vacating-in-part, and remanding-in-part this Court's Order from May 28, 2025. *V.O.S. Selections, Inc.,* 2025 149 F.4th at 1340. The CAFC specifically affirmed "that the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders exceed the authority delegated to the President by IEEPA's text" and "that the orders are 'invalid as contrary to law.'" *Id.* The CAFC vacated only "the CIT's grant of a permanent injunction universally enjoining the enforcement of the Trafficking

9

and Reciprocal Tariffs" to comply with the Supreme Court's holding in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). *Id.*

32. Separately, the CAFC issued judgment in line with the foregoing. *Id.*, Dkt. No. BL-160. Therewith, the CAFC issued an Order by which the Clerk of the CAFC was directed to "withhold issuance of the mandate through October 14, 2025, during which the parties may file a petition for a writ of certiorari in the Supreme Court." *Id.*, Dkt. No. BL-161. "If, within that period, any party notifies the Clerk in writing that it has filed a petition for a writ of certiorari, the Clerk is directed to withhold issuance of the mandate pending (1) the Supreme Court's denial of certiorari or (2) a judgment of the Supreme Court if certiorari is granted." *Id.*

33. The government filed a petition for a writ of certiorari on September 3, 2025. *Id.*, Dkt. No. BL-163. The Supreme Court granted the petition for a writ of certiorari on September 9, 2025. *Id.* Dkt. No. BL-165. Oral arguments were held on November 5, 2025.

34. The CAFC's stay remains in effect during the pendency of the government's appeal, so the Defendants continue to collect tariffs that were unlawfully enacted under IEEPA.

## COUNT I
**Repayment of Illegally Exacted Tariffs Under the Challenged Executive Orders**

35. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

36. Since February 4, 2025, Plaintiff has paid IEEPA tariffs attributable to the Challenged Executive Orders.

37. This Court issued an opinion holding the IEEPA tariffs imposed under the Challenged Executive Orders unconstitutional.

38. The United States Court of Appeals for the Federal Circuit issued an opinion affirming "that the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders

10

exceed the authority delegated to the President by IEEPA's text" and "the orders are 'invalid as contrary to law.'"

39. Because the tariffs were not authorized by federal law, the amounts paid pursuant to them were illegally exacted and a money judgment in that amount should issue against the United States.

## COUNT II
**The Subsequent Executive Orders are Ultra Vires and Violate the Separation of Powers**

40. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

41. The Constitution grants only Congress, not the President, the "Power To lay and collect Taxes, Duties, Imposts and Excises…." Art. I, § 8, cl. 1.

42. No statute authorizes the President to issue the Subsequent Executive Orders. The only statute conveying substantive authority to the President cited in the Subsequent Executive Orders is IEEPA. But IEEPA does not authorize the imposition of such tariffs, if it authorizes tariffs at all.

43. Plaintiff has a non-statutory right of action to enjoin and declare unlawful official action that is unconstitutional and ultra vires.

44. The Subsequent Executive Orders are not authorized by the IEEPA or any other statute. As such, they are ultra vires and unlawful.

45. Because the President lacks statutory authority to impose the tariffs in the Subsequent Executive Orders, the Subsequent Executive Orders are an exercise of Congressional authority in violation of separation of powers.

46. The IEEPA tariffs imposed under the Subsequent Executive Orders are similar in basis, degree, and nature to the Challenged Executive Orders.

47. This Court issued an opinion holding the IEEPA tariffs imposed under the Challenged Executive Orders unconstitutional.

48. The United States Court of Appeals for the Federal Circuit issued an opinion affirming "that the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders exceed the authority delegated to the President by IEEPA's text" and "the orders are 'invalid as contrary to law.'"

49. Because these tariffs were not authorized by law, the Court should declare that the Subsequent Executive Orders are ultra vires and contrary to law.

## COUNT III
**Repayment of Illegally Exacted Tariffs Under the Subsequent Executive Orders**

50. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

51. Since May 12, 2025, Plaintiff has paid IEEPA tariffs attributable to the Subsequent Executive Orders.

52. The IEEPA tariffs imposed under the Subsequent Executive Orders are similar in basis, degree, and nature to the Challenged Executive Orders.

53. This Court issued an opinion holding the IEEPA tariffs imposed under the Challenged Executive Orders unconstitutional.

54. The United States Court of Appeals for the Federal Circuit issued an opinion affirming "that the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders exceed the authority delegated to the President by IEEPA's text" and "the orders are 'invalid as contrary to law.'"

55. Because the IEEPA tariffs imposed under the Subsequent Executive Orders were similarly not authorized by federal law, the amounts paid pursuant to them were illegally exacted and a money judgment in that amount should issue against the United States.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests

    a.     That the Court declares that the Subsequent Executive Orders are ultra vires and contrary to law;

    b.     That the Court declares that CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged and Subsequent Executive Orders;

    c.     That the Court enjoins Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged and Subsequent Executive Orders;

    d.     A money judgment against the United States in favor of Plaintiff in the amount of all tariffs paid by Plaintiff pursuant to the illegal Challenged and Subsequent Executive Orders;

    e.     Interest available by statute or rule;

    f.     An award of reasonable attorney fees and costs to Plaintiff pursuant to 28 U.S.C. § 2412 or any other applicable authority; and

    g.     All other relief this Court deems just and proper.

Date:   December 2, 2025                    Respectfully submitted,

_____
P. Lee Smith
Matthew W. McGee
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
901 K Street, N.W. Suite 900
Washington, D.C. 20001
leesmith@bakerdonelson.com
mmcgee@bakerdonelson.com
202-326-5026

*Attorneys for BCFoods, Inc.*